# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JOHNATHAN LEE X SMITH,

    Plaintiff,

v.                                     Civil Action No. **3:10CV352**

FCM-MTC MEDICAL, LLC
d/b/a FIRST MEDICAL MANAGEMENT, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Johnathan Lee X Smith, a Virginia prisoner proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. Smith asserts a violation of the Eighth Amendment[1] in that the Defendants[2] subjected him to cruel and unusual punishment. Smith also alleges that FCM-MTC Medical, LLC d/b/a First Medical Management ("FMM"), the health care provider at the Hampton Roads Regional Jail ("HRRJ"), breached its contract with HRRJ to provide Smith access to medical and dental care. Defendants filed motions to dismiss, to which Smith has responded. This matter is ripe for judgment.

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[2] Smith sued FCM-MTC Medical, LLC d/b/a First Medical Management; Jacqueline Jones, Acting Medical Administrator; Kendra Jones Holman, RN; Nsekenene Kolongo, MD; Ralph Ablaseau, FNP; D.B. Coleman, RN; Charlene McKeithan, RN; David Simons, Assistant Superintendent; Roy W. Cherry, Superintendent; Shakira Bell, LPN; I. Sharpe, Dentist; Pamela Johnson, RN; B. Wilson, RN; Pamela Williams, RN; T.D. Hatachett, Chief of Security; Hampton Roads Regional Jail; and S. Bowen, RN.

# I. PROCEDURAL HISTORY

Smith filed his complaint, dated January 6, 2010, in the Circuit Court for the City of Portsmouth ("Circuit Court"). Smith served Defendant Cherry, Superintendent of HRRJ, on April 14, 2010. (Joint Pet. Removal (Docket No. 1) Ex. A, at 1.)

On May 14, 2010, thirty days after Smith served Cherry, Defendants removed the action to the United States District Court for the Eastern District of Virginia, Norfolk Division, by filing a Joint Petition of Removal.[3] (Docket No. 1.) Subsequently, Defendants filed motions to dismiss, to which Smith has responded.[4] The action was transferred from the Norfolk Division to the Richmond Division by Transfer Order dated May 25, 2010. (Docket No. 24.)

By Memorandum Opinion and Order entered March 2, 2011, the Court dismissed six defendants because Smith did not serve them in a timely manner.[5] (Docket Nos. 50, 51.)

---

[3] The Joint Petition for Removal was signed by Defendants Cherry, Hatachett, FMM, Jones, Kolongo, Ablaseau, McKeithan, Bell, Johnson, and Williams. Defendant Holman voluntarily joined the action and consented to removal on May 24, 2010, despite improper service.

[4] Defendants Cherry and Hatachett filed a motion to dismiss on May 17, 2010. (Docket No. 12.) Defendants Ablaseau, Bell, FMM, Johnson, Jones, Kolongo, McKeithan, and Williams (the "Medical and Dental Defendants") filed a motion to dismiss on May 18, 2010. (Docket No. 15.) Defendant Holman filed a motion to dismiss on May 25, 2010. (Docket No. 22.) On June 3, 2010, Smith filed a response to the May 17, 2010 and May 18, 2010 motions to dismiss. (Docket No. 28.) Smith filed an "objection" to the May 25, 2010 motion to dismiss. (Docket No. 29.)

[5] The Court dismissed as defendants D.B. Coleman, RN; David Simons, Assistant Superintendent; I. Sharpe, Dentist; B. Wilson, RN; S. Bowen, RN; and Hampton Roads Regional Jail (collectively,"Unserved Defendants"). To provide a full account of Smith's allegations, however, the Court includes Smith's allegations against the Unserved Defendants in the Summary of Pertinent Facts. *See infra* Part IV.

The matter is before the Court on Defendants' motions to dismiss. The Court also reviews the complaint pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).[6] For the reasons set forth below, the Court concludes that Smith's factual allegations are insufficient to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009)) (internal quotation marks omitted). Therefore, the Court will dismiss Smith's claims for relief. Nevertheless, such dismissal is without prejudice because it may be possible for Smith to plead sufficient facts to state adequate Eighth Amendment claims. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (noting that a plaintiff should have "'every opportunity to cure a formal defect in [a] pleading'" (*quoting* 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)).

## II. MOTION TO DISMISS STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. It does not resolve issues of fact, merit, or the availability of various defenses. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A.

---

[6] Section 1997e(c)(1) of Title 42 of the United States Code requires a court to "dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous . . . ." 42 U.S.C. § 1997e(c)(1). Additionally, 28 U.S.C. § 1915A requires the Court to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "dismiss the complaint, or any portion of the complaint" that "is frivolous . . . or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a)–(b)(1). The mandatory review under these statutes applies even if the parties have paid the full filing fee. *See Johnson v. Hill*, 965 F. Supp. 1487, 1488 (E.D. Va. 1997).

3

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded complaint is taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him [or her] to relief." *Conley*, 355 U.S. at 45-46. In *Bell Atlantic Corp.*, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). Thus the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than "conceivable." *Id.* Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. SUMMARY OF SMITH'S CLAIMS

Smith makes eleven claims:[7]

| | |
|---|---|
| Claim One: | Defendant Bowen did not provide Smith access to medical care on January 7, 2008. |
| Claim Two: | Defendant Holman did not provide Smith access to medical care on January 9, 2008. |
| Claim Three: | Defendant Wilson did not provide Smith access to medical care on January 18, 2008. |
| Claim Four: | Defendant Johnson did not provide Smith access to medical care on January 20, 2008. |
| Claim Five: | Defendant Williams did not provide Smith access to medical care on January 23, 2008. |
| Claim Six: | Defendant Ablaseau did not provide Smith access to medical care on January 24, 2008. |
| Claim Seven: | Defendant Wilson did not provide Smith access to medical care on January 25, 2008. |
| Claim Eight: | Defendant Kolongo failed to conduct the follow-up appointment he scheduled on January 28, 2008. |

---

[7] The numbering of these claims generally tracks Smith's method of identifying the claims. Claims Seven and Eight, however, have been switched to place the claims in chronological order.

Claim Nine:     Defendant Coleman did not provide Smith access to medical care on April 1, 2008.

Claim Ten:      Defendant Williams did not provide Smith access to medical care on May 19, 2008.

Claim Eleven: Defendants Sharpe, Bell, FMM, McKeithan, and Hatachett did not provide Smith access to dental care from February 4, 2008 through September 3, 2008.

## IV. SUMMARY OF PERTINENT FACTS

During the events about which Smith complains, Smith was incarcerated at HRRJ. (Joint Pet. Removal Att. 1 ("Compl."), at 2.) While incarcerated, Smith submitted multiple Emergency Grievance Forms ("EGFs"). In these EGFs, Smith complained of various ailments. He seeks damages for the Defendants' alleged failure to respond properly.

### A.     Smith's Diagnosis and Original Treatment

In December of 2007, Smith was experiencing chronic pain on his right side. (Compl. ¶ 9.) On December 24, 2007, Nurse Practitioner Ablaseau[8] determined that the pain was due to inflamation in Smith's right lung "stemming from a recent strep infection." (Compl. ¶ 9.) Ablaseau prescribed medication to Smith and scheduled Smith for a follow-up appointment to take place four weeks later.[9] (Compl. ¶¶ 7, 13.) The follow-up appointment was scheduled for January 24, 2008. (Compl. ¶ 13(a).)

---

[8] The Court will spell this Defendant's name the way it is spelled in his Memorandum of Law in Support of Defendants' Joint Motion to Correct Misnomer. (Docket No. 16.) The Court notes that this Defendant's name is alternatively spelled "Absaleau." (Defs.' Joint Mot. Dismiss (Docket No. 15) Ex. F, at 5.)

[9] It is a reasonable assumption that Ablaseau prescribed two weeks' worth of medication because Smith complained that he ran out of medication approximately two weeks after the December 24, 2007 diagnosis.

## B.    January 7, 2008 EGF

Approximately two weeks later, on January 7, 2008, Smith submitted an EGF. (Compl.
¶ 7.) This occurred while Smith was in segregation. (Compl. ¶ 7.) In this EGF, Smith
complained that he had "taken all that medicine" and "request[ed] a consultation with a physician
and adequate medical treatment, including medication to relieve pain." (Compl. ¶ 7.) Smith's
EGF complained of "permanent pain" that was "still present in [his] right side and still radiate[d]
across [his] stomach muscles into [his] left side." (Compl. ¶ 7.) Smith stated that his chest
muscles were sore. (Compl. ¶ 7.) Smith claims he did "not have access to Sick Call Slips on
segregation."[10] (Compl. ¶ 7.) The same day, Bowen, who is a registered nurse, responded to
Smith, informing Smith that his complaint had been determined "not to be an emergency."
(Compl. ¶ 7(a).) The response indicated that Smith needed to submit a sick request. (Compl.
¶ 7(a).)

Smith alleges that Bowen acted with deliberate indifference to Smith's health because
"Bowen intentionally failed to provide [Smith] access to medical care" on this day.[11] (Compl. 3.)

## C.    January 9, 2008 EGF

Two days later, on January 9, 2008, Smith submitted an EGF. (Compl. ¶ 8.) In that EGF,
Smith complained that "[t]here [was] constant pain in [his] right side." (Compl. ¶ 8.) Smith
further complained: "I can feel this pain radiate across and into my stomach muscles, causing a
feeling of tightness in my stomach muscles. My chest muscles are also sore. Mucus is still

---

[10] The EGFs were not included in the record transmitted to this Court when it was removed from the state.

[11] By Memorandum Opinion and Order entered on March 2, 2011, the Court dismissed Bowen as a defendant. (Docket Nos. 50, 51.)

present in my throat and chest. This morning, I coughed up blood mixed with mucus." (Compl. ¶ 8.) Smith again informed the medical staff that he did "not have access to Sick Call Slips" while in segregation. (Compl. ¶ 8.) Smith requested that a doctor see him. (Compl. ¶ 8.) The same day, Defendant Holman, who is a registered nurse, responded to Smith, informing Smith that it had been determined that his complaint was "not . . . an emergency." (Compl. ¶ 8(a).) The response indicated that Smith needed to submit a medical request. (Compl. ¶ 7(a).)

Smith alleges that Defendant Holman acted with deliberate indifference to Smith's health because Holman "intentionally failed to provide [Smith] access to medical care" on this day. (Compl. 4.)

### D.    January 18, 2008 EGF

Nine days later, on January 18, 2008, Smith submitted an EGF. (Compl. ¶ 9.) In this EGF, Smith complained that "permanent and substantial pain [was] still present in [his] right side." (Compl. ¶ 9.) Smith further stated: "Mucus has rebuilt in my throat and chest. The muscles across my chest are extremely sore. Pain intensifies in my right side whenever I deeply inhale." (Compl. ¶ 9.) Smith requested a doctor and medication to treat his pain. (Compl. ¶ 9.) The same day, Wilson, who is a registered nurse, responded to Smith, informing Smith that his complaint was "[d]etermined to be an emergency."[12] (Compl. ¶ 10.) In response to this EGF, Wilson informed Smith that a clinic appointment had been made for him. (Compl. ¶ 10.)

---

[12] Defendants disagree with the response of the EGF. Defendants state that the medical staff determined that his complaint was determined *not* to be an emergency. (Joint Pet. Removal Att. 17 ("Kolongo Demurrer"), at 5.)

Smith alleges that Wilson acted with deliberate indifference to Smith's health because "Wilson intentionally failed to provide [Smith] access to medical care" on this day.[13] (Compl. 5.)

### E.    January 20, 2008 EGF

Two days later, on January 20, 2008, Smith submitted an EGF. (Compl. ¶ 11.) In the EGF, Smith generally complained as he did before. (Compl. ¶ 11.) Smith stated that "[c]hronic and significant pain [was] afflicting [his] rib cage[], [his] right side, the muscles across [his] chest, [his] lower back, and both knees." (Compl. ¶ 11.) Smith complained that he could "hardly sleep for pain." (Compl. ¶ 11.) The same day, Defendant Johnson, who is a registered nurse, responded to the EGF. Johnson informed Smith that his complaint had been determined "not to be an emergency." (Compl. 11(a).) The response also indicated that he had a clinic appointment scheduled and that, at that time, the medical staff would order Smith medication. (Compl. ¶ 11(a).)

Smith alleges that Defendant Johnson acted with deliberate indifference to Smith's health because "Johnson intentionally failed to provide [Smith] access to medical care" on this day. (Compl. 6.)

### F.    January 23, 2008 EGF

Three days later, on January 23, 2008, Smith submitted an EGF. (Compl. ¶ 12.) In the EGF, Smith generally complained as he did before. (Compl. ¶ 12 ("The persistent and terrible pain is still present in my right side. My throat and chest are still loaded with mucus, my chest muscles are still store & very painful. I am still having breathing problems.").) However, in this

---

[13] By Memorandum Opinion and Order entered on March 2, 2011, the Court dismissed Wilson as a defendant. (Docket Nos. 50, 51.)

EGF, Smith added that he suffered from bone spurs and a herniated spinal disc. (Compl. ¶ 12.) Smith also complained of cold flashes. (Compl. ¶ 12.) The same day, Defendant Williams, who is a registered nurse, responded to Smith. Williams informed Smith that his complaint had been determined "not to be an emergency." (Compl. ¶ 12(a).) The response again informed Smith that he had an appointment scheduled. (Compl. ¶ 12(a).)

Smith alleges that Defendant Williams acted with deliberate indifference to Smith's health because "Williams intentionally failed to provide [Smith] access to medical care" on this day. (Compl. 7.)

### G.    January 24, 2008 Scheduled Follow-Up Appointment

The following day, on January 24, 2008, at 11:30 a.m., a jail officer ordered Smith to prepare himself for his follow-up appointment. (Compl. ¶ 13(a).) At 1:00 p.m., a jail officer informed Smith that his appointment had been cancelled because Defendant Ablaseau went home early that day. (Compl. ¶¶ 13(b), 15.)

Smith alleges that Defendant Ablaseau acted with deliberate indifference to Smith's health because "Ablaseau intentionally failed to provide [Smith] access to medical care" on this day. (Compl. 7.)

### H.    January 25, 2008 EGF

The next day, on January 25, 2008, Smith submitted an EGF. In the EGF, Smith complained:

> On January 24, 2008, I was supposed to have been examined and treated by a health care provider; however, I was not examined and treated because the health care provider decided to go home early. I request to be examined TODAY by one of your doctors. I don't understand why it's so difficult for your people to provide me timely, effective treatment as mandated by law and by Mr. Cherry's policies.

10

(Compl. ¶ 15.) The same day, Wilson responded to Smith. Wilson informed Smith that his complaint had been determined "not to be an emergency." (Compl. ¶ 15(a).) Wilson further informed Smith that a clinic appointment had been made so that he could "be seen in medical." (Compl. ¶ 15(a).)

Smith alleges that Wilson acted with deliberate indifference to Smith's health because "Wilson intentionally failed to provide [Smith] access to medical care" on this day. (Compl. 9.)

## I.    January 28, 2008 Rescheduled Follow-Up Appointment

Three days later, on January 28, 2008, "Defendant Kolongo ordered a follow-up appointment within thirty (30) days with him for [Smith]."[14] (Compl. ¶ 14.) Smith alleges that Defendant Kolongo acted with deliberate indifference to Smith's health because Kolongo "intentionally failed to conduct the follow-up appointment he scheduled, on January 28, 2008, for [Smith]." (Compl. 8.)

The Complaint is silent regarding the period of time between January 28, 2008 and April 1, 2008.

## J.    April 1, 2008 EGF

On April 1, 2008, Smith submitted an EGF. In this EGF, Smith complained:

Since December 2007, there has been persistent and severe pain in my right side. This pain afflicts the muscles across my chest. I suspect that I have developed cancer or a tumor. I feel very weak and like I'm dying. In the past 90 days, I have lost at least 25lbs of my body weight. My inquinal hernia is also causing great pain in my groin, stomach, and right testicle. Since February 2008, I have submitted Sick Call

---

[14] This is the extent of Smith's statement of the events that occurred on January 28, 2008. Conspicuously absent from Smith's complaint, however, is a description of what treatment, if any, Smith received on this day. Defendants state that "Dr. Kolongo treated and evaluated [Smith] for his lung condition" on this day. (Kolongo Demurrer 5.)

> Slips for treatment at least three times. To date, I have not been given a chance to be examined and treated by a doctor.

(Compl. ¶ 16.) The same day, Coleman, who is a registered nurse, responded to Smith. Coleman informed Smith that his complaint had been determined "not to be an emergency." (Compl. ¶ 16(a).) Coleman further stated "Medical is aware of this matter and treatment will be rendered if and when appropriate." (Compl. ¶ 16(a).) The response also indicated that a clinic appointment had been made. (Compl. ¶ 16(a).)

Smith alleges that Coleman acted with deliberate indifference to Smith's health because "Coleman intentional[ly] failed to provide [Smith] access to medical care" on this day.[15] (Compl. 9–10.)

### K.    May 19, 2008 EGF

On May 19, 2008, Smith submitted an EGF. (Compl. ¶ 17.) In this EGF, Smith complained again about the pain in his right side. (Compl. ¶ 17.) The same day, Defendant Williams responded to Smith. Williams informed Smith that his complaint had been determined "not to be an emergency." (Compl. ¶ 17(a).) The response further indicated that an appointment had been made for Smith. (Compl. ¶ 17(a).)

Smith alleges that Defendant Williams acted with deliberate indifference to Smith's health because "Williams intentionally failed to provide [Smith] access to medical care" on this day. (Compl. 10.) The Complaint is silent regarding the period of time between May 19, 2008 and December 10, 2008.

---

[15] By Memorandum Opinion and Order dated March 2, 2011, the Court dismissed Coleman as a defendant. (Docket Nos. 50, 51.)

### L. Dental Claims and December 2008 Medical Treatment

Smith alleges that Defendants Sharpe, Bell, FMM, McKeithan, and Hatachett acted with deliberate indifference to Smith's health because they "intentionally failed to provide [Smith] access to dental care" from February 4, 2008 through September 3, 2008, "despite his many requests for treatment and despite their knowledge he was suffering serious and substantial pain caused by his dental problem." (Compl. 11.)

On December 10, 2008, December 24–25, 2008, and December 29, 2008, Smith "underwent extensive emergency medical treatment" at an "off-site medical facility" for dental problems. (Compl. ¶ 18.)

### M. Prayer for Relief

Smith requests the following monetary damages:

1.  One million dollars in compensatory and punitive damages against Defendant Cherry for injuries Smith suffered as a result of Cherry's failure to provide Smith necessary medicine "as mandated by Code § 53.1-126." (Compl. 12.)

2.  One million dollars in compensatory damages against Defendants Bowen, FMM, Hatachett, Simons, Jones, Holman, Coleman, Williams, Wilson, Johnson, Kolongo, Ablaseau, and Cherry, jointly and severally, for "intentionally failing to provide [Smith] access to medical care and for injuries arising therefrom, in violation of the 8th and 14th Amendments, cost[s], and reasonable attorney fees." (Compl. 12.)

3.  Fifty thousand dollars in punitive damages against each of Defendants Bowen, FMM, Hatachett, Simons, Jones, Holman, Coleman, Williams, Wilson, Johnson, Kolongo, Ablaseau, and Cherry for "intentionally failing to provide [Smith] access to medical care and for injuries arising therefrom, in violation of the 8th and 14th Amendments, cost[s], and reasonable attorney fees." (Compl. 12.)

4.  One million dollars in compensatory damages against Defendants FMM "and its employees named herein," jointly and severally, for "injuries arising from these Defendants' intentional and reckless failure to provide [Smith] access to dental and medical care." (Compl. 12.)

5.      Fifty thousand dollars in punitive damages from each of Defendants FMM "and its employees named herein," for "injuries arising from these Defendants' intentional and reckless failure to provide [Smith] access to dental and medical care." (Compl. 12.)

6.      Twenty-five thousand dollars in compensatory damages against Defendants Sharpe, Bell, Hatachett, FMM, and McKeithan, jointly and severally, for "injuries arising from [their] intentional failure to provide Plaintiff access to dental care from February 4, 2008, through September 3, 2008." (Compl. 12.)

7.      Ten thousand dollars in punitive damages against each of Defendants Sharpe, Bell, Hatachett, FMM, and McKeithan for "injuries arising from [their] intentional failure to provide Plaintiff access to dental care from February 4, 2008, through September 3, 2008." (Compl. 12.)

## V. ANALYSIS

### A.    Eighth Amendment Claims

An inmate's Eighth Amendment rights are violated when he is subjected to an unnecessary and wanton infliction of pain, *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A two-part test is used to determine whether prison conditions present a constitutional violation. The plaintiff must show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). The first showing requires the court to determine whether the deprivation of a basic human need was "*objectively* 'sufficiently serious,'" while the second requires it to determine whether the officials subjectively acted with a "'sufficiently culpable state of mind.'" *Id.* (*quoting Wilson*, 501 U.S. at 298).

Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler*, 989 F.2d at 1380 n.3 (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (*citing Hudson*, 503 U.S. at 8–9 (1992)). To demonstrate such extreme deprivation, Smith "must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *Id.* at 634 (*quoting Strickler*, 989 F.2d at 1381).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (*citing Estelle*, 429 U.S. at 105–06). Generally, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (*citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). The mere fact that some level of treatment was rendered, however, does not preclude a finding that an official acted with deliberate indifference. *See Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.") (*citing Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985); *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)); *Estelle*, 429 U.S. at 104 n.10 (*quoting Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) for the proposition that a "doctor's choosing the 'easier and less efficacious treatment' of throwing away the prisoner's ear and stitching the stump may be attributable to 'deliberate

indifference . . . rather than an exercise of professional judgment'") (alteration in original); *cf. Mabry v. Freeman*, No. 2:06cv12076, 2007 WL 2332392, at *7 (E.D. Mich. Aug. 15, 2007) (finding no deliberate indifference where defendant did not "thoughtlessly continue with the same treatment under circumstances where Plaintiff's condition continued to deteriorate," but instead "attempted to adapt his treatment to Plaintiff's needs"). A plaintiff may also prove deliberate indifference by introducing evidence that a defendant recklessly refused or delayed in providing a plaintiff with access to medical care. *Estelle*, 429 U.S. at 104–05 & n.11 (citing seven such cases); *Oxendine v. Kaplan*, 241 F.3d 1272, 1277–79 (10th Cir. 2001) (concluding prison doctor's obviously ineffectual efforts to attach Plaintiff's severed finger could support an inference of deliberate indifference).

### B.   Claims One Through Seven, Nine, And Ten:  Failure To Provide Same-Day Treatment

Claims One through Five, Claim Seven, and Claims Nine and Ten involve allegations of deliberate indifference to Smith's health because the medical personnel did not treat Smith on the same day that he submitted various EGFs. Claim Six involves an allegation of deliberate indifference to Smith's health because his follow-up appointment was cancelled because the medical attendant went home early that day. As pleaded, these claims satisfy neither the objective nor subjective prongs for an Eighth Amendment claim.

### 1.   The Objective Prong

To satisfy the objective prong, Smith must allege a medical need that was objectively serious. An objectively serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (*quoting*

*Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *Webb v. Hamidullah*, 281 F. App'x

159, 165 (4th Cir. 2008) (*quoting Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Loe v.

Armistead*, 582 F.2d 1291, 1292–93, 1295–96 (4th Cir. 1978)).

In the context of an allegation of cruel and unusual punishment as a result of delayed

medical care, the objective-prong analysis does not end there. In addition to alleging that the

medical need was objectively serious, Smith must plausibly allege facts indicating that the delay

in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751

(10th Cir. 2005) (*quoting Oxendine*, 241 F.3d at 1276); *id.* at 754 (*quoting Sealock v. Colorado*,

218 F.3d 1205, 1210 (10th Cir. 2000) (identifying this additional requirement of the objective

prong); *see Webb*, 281 F. App'x at 166–67 n.13 (explaining that where an Eighth Amendment

claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate

"'that the delay resulted in substantial harm.'" (*quoting Sealock*, 218 F.3d at 1210)). "[T]he

substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or

considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases).

Not all pain, however, satisfies this standard. *See Wood v. Housewright*, 900 F.2d 1332,

1334–35 (9th Cir. 1990). The complaint does not suggest that Smith's condition warrants

emergency attention. *Id.* at 1335 (holding that, even in the presence of pain resulting from a

broken pin in a shoulder unaided by a sling, the fact that an inmate was prescribed pain killers

several days later negated a claim that the delay resulted in substantial harm). Moreover, Smith

simply fails to allege facts that plausibly suggest any harm he suffered resulted from a delay in

treatment. *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (granting a motion to

dismiss on the basis that, *inter alia*, the inmate did not allege how he was harmed when medical staff kept the defendant "waiting for twenty-five minutes and then sent him back to his cell without treating his chest pains"); *see also Jackson v. Corr. Corp. Am.*, 564 F. Supp. 2d 22, 28 (D.D.C. 2008) ("The complaint does not allege . . . that the deprivation of prescription medication for plaintiff's stomach ailment posed an excessive risk . . . . For these reasons, the plaintiff cannot recover on his Eighth Amendment claim . . . ."). Furthermore, Smith fails to allege plausible facts which indicate that the delay substantially harmed his treatment. *Wood*, 900 F.2d at 1333, 1335 (holding that a delay of "several days" in fixing a broken shoulder did not substantially harm Plaintiff's treatment, "considering that the only remedy immediately available was a prescription for painkillers"). Smith's failure to allege facts which plausibly indicate that any delay in treatment caused him substantial harm does not allow the Court to draw the reasonable inference that the Defendants are liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## 2. The Subjective Prong

"For [the] second, subjective prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation." *Davis v. Stanford*, 382 F. Supp. 2d 814, 820 (E.D. Va. 2004) (*citing Estelle*, 429 U.S. at 106; *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)), *aff'd*, 127 F. App'x 680 (4th Cir. 2005). "A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action." *Id.* (*citing Wright*, 766 F.2d at 849; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp 409, 414 (E.D. Va. 1990)).

In this case, Smith complains that medical staff should have tended to Smith immediately upon their receipt of his grievance forms. For each EGF that Smith filed, medical staff made a medical determination that his ailments were not considered emergencies and could wait until his scheduled appointment. *See Henderson v. Commonwealth*, No. 7:07-cv-00266, 2008 WL 204480, at *15 (W.D. Va. Jan. 23, 2008). In *Henderson*, the United States District Court for the Western District of Virginia granted a motion to dismiss an inmate's complaints against medical staff when the staff determined that the inmate's emergency grievances did "not meet the definition for an emergency" and instead scheduled the inmate for regular sick call for two days later. *Id.* at *12. The inmate in *Henderson* complained of uncontrollable vomiting of acidic bile, blood, and black coffee-ground material; dizziness; nausea; excruciating stomach pain; chest pain; and difficulty breathing. *Id.* The Court held that the nurse's immediate written response, coupled with the inmate's evaluation two days later, showed that the medical staff did not act with deliberate indifference to the inmate's complaints. *Id.* at *15. The Court determined that the inmate alleged, at most, a cause of negligence, which is not actionable under § 1983. *Id.*

"It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment. *Id.* So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *See Brown v. Harris*, 240 F.3d 383, 389–90 (4th Cir. 2001). Because the reasonableness of any such response usually calls for a medical judgment, "[w]hether and how pain associated with medical treatment

19

should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes*, 95 F.3d at 592; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("'[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.'" (*quoting Domino v. Tex. Dep't of Crim. Justice*, 329 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks omitted))).

This is not such an extreme circumstance. *See, e.g., White v. Napoleon*, 897 F.2d 103, 109–10 (3d Cir. 1990) (finding that a complaint which alleges a doctor's intentional infliction of pain on prisoners without any medical justification may survive a motion to dismiss). In order for Smith to state a claim for deliberate indifference, he must be able to show that the medical staff "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct.'" *Gobert*, 463 F.3d at 346 (*quoting Domino*, 329 F.3d at 756).

In this case, Smith admits that medical personnel diagnosed and treated him for inflamation of his right lung. (Compl. ¶ 9.) The medical personnel prescribed him with enough medication to last for two weeks. When his medication ran out,[16] Smith began complaining about his pain again. For each emergency grievance that Smith filed, medical personnel responded in writing the very same day. Smith's own allegations of the medical staff's responses to his grievances indicate that they reviewed his records, often informed him of his upcoming appointment, and made a medical determination that his current complaint did not constitute an emergency. When Smith was treated at his scheduled appointments, Smith does not allege that

---

[16] Smith does not allege that he was denied adequate medical care on the basis that he was only prescribed with two weeks of medication in between doctor visits scheduled four weeks apart. He only complains that he received *delayed* medical care because he was not seen by a doctor on the same day that each of his EGFs were submitted.

such treatment was ineffective. Smith's allegations of the medical staff's responses to his

emergency grievances do not indicate that the staff either refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in similar conduct. *Gobert*, 463

F.3d at 346. Smith's bare assertions that the Defendants acted with deliberate indifference do not

suffice to state a cause of action. *Iqbal*, 129 S. Ct. at 1949. Accordingly, Claims One through

Seven and Claim Nine will be DISMISSED WITHOUT PREJUDICE.

### C.    Claim Eight: Failure to Conduct Follow-Up Appointment

The entirety of Claim Eight reads as follows:

> Defendant Kolongo, acting with deliberate indifference, intentionally
> failed to conduct the follow-up appointment he scheduled, on January 28, 2008,
> for Plaintiff.

> On January 28, 2008, Defendant Kolongo ordered a follow-up
> appointment within thirty (30) days with him for Plaintiff, counting from January
> 28, 2008.

> Despite his knowledge of Plaintiff's continuing pain and his continuing
> requests for medical care, Defendant Kolongo failed to arrange for said follow-up
> appointment to be conducted.

(Compl. 8–9.) Based on the principles previously discussed, Smith fails to state a claim upon

which relief can be granted. It is apparent that "Dr. Kolongo treated and evaluated [Smith] for

his lung condition" on January 28, 2008. *See supra* note 14 and accompanying text. According

to Smith, Dr. Kolongo then scheduled a follow-up appointment for thirty days later. Dr. Kolongo

"failed to arrange for said follow-up appointment to be conducted." (Compl. 9.) Smith does not

indicate how long he was allegedly denied care after January 28, for what ailment the follow-up

appointment was scheduled, or for what reason Kolongo allegedly failed to arrange the follow-

up. Also absent is any indication that Smith was harmed by any delay in conducting the follow-

21

up appointment, or what treatment ultimately was necessary, if any. Even viewed in the light most favorable to Smith, *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), the complaint does not contain sufficient facts which plausibly indicate Defendant Kolongo acted with deliberate indifference to any substantial risk of serious harm *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Claim Eight will be DISMISSED WITHOUT PREJUDICE.

### D. Claim Eleven: Dental Claims

The entirety of Claim Eleven reads as follows:

> On February 4, 2008, through September 3, 2008, acting with deliberate indifference, Defendants, Sharpe, Bell, FMM, McKeithan, and Hat[a]chett, intentionally failed to provide Plaintiff access to dental care, despite his many requests for treatment and despite their knowledge he was suffering serious and substantial pain caused by his dental problem.

> On December 10, 2008, December 24–25, 2008, and December 29, 2008, Plaintiff underwent extensive emergency medical treatment for the same health problems alledged [sic] above at an off-site medical facility.

(Compl. 11 (citation omitted).) Claim Eleven rests almost entirely on "labels and conclusions." *Bell Atl. Corp.*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (alteration in original) (*quoting Bell Atl. Corp.*. 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id. (quoting Bell Atl. Corp.*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id. (quoting Bell Atl. Corp.*, 550 U.S. at 557) (internal quotation marks omitted).

Claim Eleven does not meet this standard.[17] Smith fails to allege facts which permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Bell Atl. Corp.*, 550 U.S. at 556). Accordingly, Claim Eleven will be DISMISSED WITHOUT PREJUDICE.

## VI. CONCLUSION

For the above reasons, the Court will GRANT Defendants' motions to dismiss. (Docket Nos. 12, 15, 22.) Smith's claims will be DISMISSED WITHOUT PREJUDICE. An appropriate Order will accompany this Memorandum Opinion.

/s/
James R. Spencer
Chief United States District Judge

Date: 3-21-11
Richmond, Virginia

---

[17] This conclusion is readily apparent in the context of the rest of Smith's claims. *See Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").